<u>**NOT FOR PUBLICATION**</u>

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PETER SHARKEY,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**VERIZON NEW JERSEY INC.**<br><br>    **Defendant.** | **Civil Action No. 14-cv-02788 (JLL) (JAD)**<br><br><br>**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR ATTORNEYS' FEES AND COSTS** |

<u>JOSEPH A. DICKSON, U.S.M.J.</u>

This matter comes before the Court upon Plaintiff's motion to remand this matter to the Superior Court of New Jersey, Essex County, pursuant to 28 U.S.C. § 1447(c). (ECF No. 4). The Hon. Jose L. Linares, U.S.D.J. referred Plaintiff's motion to this Court for a Report and Recommendation. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument. Upon consideration of the parties' submissions, and for the reasons stated below, it is the recommendation of this Court that Plaintiff's motion to remand the case be **GRANTED** and Plaintiff's request for attorneys' fees and costs be **DENIED.**

# I.    BACKGROUND

## a.    Factual Background

Plaintiff Peter Sharkey ("Plaintiff") was an employee of Defendant Verizon New Jersey Inc. ("Verizon") from December 1986 to the end of December 2013. (Complaint at ¶ 3). During his employment, Plaintiff worked as a Facilities Technician. (Id. at ¶ 4). Plaintiff injured his back in a work-related accident sometime in 1990. (Id. at ¶ 6). As a result of this injury, Plaintiff underwent three back surgeries, with the latest surgery being in 2003. (Id. at ¶¶ 6-7). After his most recent surgery in 2003, Plaintiff's physician imposed certain restrictions on him such as not being permitted to climb polls or ladders and not lifting more than sixty lbs. (Id. at ¶ 7). Despite these restrictions, Plaintiff still worked on ground-mounted pedestals as a Facilities Technician until August 2013. (Id. at ¶ 8).

In or about September 2012, Verizon and AFL-CIO Locals 827 and 1944 agreed to adopt a Medical Restriction Leave of Absence Policy Amendment ("MR-LOAPA"). (Id. at 14). The agreed to MR-LOAPA concerned "the treatment of associate employees who are determined to be able to work but have medical restrictions that may prevent performance of all the essential functions of their normal assignment with or without reasonable accommodation." (Id. at ¶ 15). Of particular relevance to the instant case, the MR-LOAPA also provided that an employee who was "medically restricted" for more than 150 days and for whom another position was not available would, if eligible, be placed on a Medically Restricted Leave of Absence (MR-LOA) or a leave pursuant to the Family Medical Leave Act. (Id. at 16). When that leave thereafter expired, the employee would be terminated. (Id.). On or about August 13, 2013, Verizon informed Plaintiff that as a result of his medical restrictions and the newly implemented MR-LOAPA, Plaintiff was not permitted to work as a Facilities Technician. (Id. at ¶ 17-19)  Plaintiff was told he would be

2

required to find a new position and if he failed to locate such a position by January 10, 2014, he would be placed on a Medically Restricted Leave of Absence for seven months, and then terminated. (Id. at ¶ 17). After being informed he was not permitted to work as a Facilities Technician in August 2013, Verizon gave Plaintiff light duty assignments such as riding in a truck with technicians or taking computer classes. (Id. at ¶ 19.). Although Plaintiff attempted to locate another position at this time, he was unsuccessful. (Id. at ¶ 20-21). At the end of December 2013, Plaintiff elected to accept Verizon's "Special Enhanced Voluntary Separation Incentive Offer" and left the company. (Id. at ¶ 22).

### b. **Procedural History**

On or about March 24, 2014, Plaintiff filed the instant lawsuit against Defendant Verizon New Jersey Inc. in the Superior Court, Law Division, Essex County, New Jersey, alleging a failure to accommodate Plaintiff's disability in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq. ("NJLAD") and disparate treatment, also in violation of the NJLAD. (Complaint, ¶¶ 23-45). Included in his disparate treatment claim, Plaintiff also alleged constructive discharge. (Plt's Br., ECF No. 4-1, at 14).

On or about May 01, 2014, Defendant removed the instant action to this Court pursuant to 28 U.S.C. § 1441(a), asserting that Plaintiff's Complaint raises federal questions. (Notice of Removal, ECF No. 1, ¶ 22). Specifically, Defendant's Notice of Removal contends that removal is proper because Plaintiff's state law claims are completely preempted by the Labor Management Relations Act, 29 U.S.C. § 185, et. seq. ("LMRA"), "because their resolution requires an analysis and interpretation of a collective bargaining agreement . . . between Verizon NJ and the labor union representing Plaintiff." (Id. at ¶ 6). Defendant also asserts that removal is proper because Plaintiff's claims are also completely preempted the Employee Retirement Income Security Act

3

of 1974, 29 U.S.C. § 1001, et seq, ("ERISA"). (Id. at ¶ 7). In particular, Defendant argues that an analysis of Plaintiff's allegation of constructive discharge requires an interpretation and application of the terms of the ERISA governed Separation Offer that Plaintiff chose to participate in. (Id. at ¶ 16).

On May 19, 2014, Plaintiff Sharkey filed the instant motion to remand, contending that, pursuant to 28 U.S.C. § 1447(c), the current action must be remanded to state court because there is no federal question jurisdiction, nor any other basis for removal. (Pl. Br., ECF No. 4-1, at ). Specifically, Plaintiff argues that his claims do not require interpretation of the collective bargaining agreement and therefore, are not subject to complete preemption under the LMRA. (Id. at 12-13). Instead, Plaintiff argues that his claims seek to vindicate "nonnegotiable state law rights" which are independent of Verizon's collective bargaining agreement. (Id. at 14).

In addition, Plaintiff contends that his acceptance of the Separation Offer, has no legal significance in this matter, and does not subject his claims to preemption under the LMRA or ERISA. (Id. at 15). In support of this position, Plaintiff highlights that the Separation Offer is not mentioned in either Count of the Complaint, and that his constructive discharge claim is evidenced not by the Separation Offer, but instead by, "the Policy Amendment (a/k/a MR-LOAPA); Verizon's refusal to permit him to work as a facilities technician; its reassignment of him to a series of less desirable, 'light duty' assignments; and its stated intent to place him on an unpaid medical leave and then terminate his employment." (Id. at 14, quoting Compl. ¶ 41). Lastly, Plaintiff argues the matter was improperly removed and requests that the Court award Plaintiff's counsel fees and costs "incurred as a result of the removal." (Id. at 15).

On June 02, 2014, Defendant filed an opposition to Plaintiff's Motion to Remand contending that the Court has federal question jurisdiction over the action. (Def's. Opp'n., ECF

4

No. 6, at 5). Defendant maintains that Verizon's collective bargaining agreement is the basis for both Plaintiff's disparate treatment claim and failure to accommodate claim, and as such, both claims are preempted by § 301 of the LMRA. (Id. at 8). Defendant argues, "Plaintiff's Complaint . . . alleges that the collectively-bargained provision itself is the discriminatory act giving rise to his disparate treatment claim and its application governs his failure to accommodate claim." (Id.). Based on this reasoning, Defendant argues Plaintiff's Counts "are inextricably intertwined with the interpretation and application" of the collective bargaining agreement. (Id. at 11).

Moreover, Defendant argues that Plaintiff's constructive discharge allegation raises a federal question pursuant to both the LMRA and ERISA. (Id. at 12). Defendant contends that the constructive discharge claim is preempted by the LMRA because the Separation Offer that Plaintiff accepted is a collectively-bargained for benefit, which requires interpretation of the collective bargaining agreement in order to resolve. (Id.). Finally, Defendant argues that because the Separation Offer is an employee benefits plan governed by ERISA, "the Court will have to interpret and apply the terms of this ERISA plan" to analyze Plaintiff's constructive discharge claim. (Id. at 13).

On or about June 09, 2014, Plaintiff filed a Reply Brief in further support of his Motion to Remand. (Plt's. Rep. Br., ECF No. 7). In his Reply, Plaintiff argues that the case does not involve the interpretation of the collective bargaining agreement. (Id. at 7). In fact, Plaintiff argues that the terms and meaning of the MR-LOAPA are not in dispute and thus the "meaning of these contract terms is clearly not the subject of the dispute in this matter." (Id. at 9). Therefore, Plaintiff asserts that the analysis is not determinative of the meaning of the MR-LOAPA, but instead of the "actual events which transpired between plaintiff and defendant." (Id. at 10). Plaintiff urges that the key inquiry in this matter is "the actions and motivations of the parties relative to rights

conferred by state law . . ." (Id. at 10). In support of this position, Plaintiff emphasizes that parties to a collective-bargaining agreement do not have the ability to contract for what is illegal under state law. (Id. at 8).

Furthermore, Plaintiff's Reply adamantly contends that Defendant misunderstands Plaintiff to have alleged that his acceptance of the Separation Offer constituted a constructive discharge. (Id. at 11). Plaintiff reiterates in his Reply that "the EISP and any definitions in the CBA are completely immaterial to Plaintiff's claims for failure to accommodate his disability and disparate treatment and play no role in determining whether Plaintiff was constructively discharged." (Id. at 12).

Lastly, Plaintiff, noting that Defendant has failed to address or oppose his request, once again asks that the Court award Plaintiff's counsel fees and costs pursuant to 28 U.S.C. § 1447 (c). (Id. at 12).

## II.    **LEGAL STANDARD – Motion to Remand**

### a.    **Federal Preemption Under the LMRA**

In <u>Allis–Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court set forth the standard for determining whether a state law claim is completely preempted by § 301: "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." Id. at 220, 105 S.Ct. 1904 (citation omitted). In that case, the plaintiff brought a state tort claim against his employer for the bad-faith processing of an insurance claim. The Supreme Court concluded that the cause of action was completely preempted by § 301 because "the duties imposed and rights

6

established through the state tort...derive from the rights and obligations established by the [collective-bargaining] contract," and resolution of the dispute would therefore "inevitably...involve contract interpretation." Id. at 217–18. The Supreme Court noted, however, that "it would be inconsistent with congressional intent under [§ 301) to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Id. at 212.

Subsequently, in Caterpillar Inc. v. Williams, 482 U.S. 386, 107 S.Ct. 2425 (1987), the Supreme Court considered whether § 301 permitted employees covered by a collective bargaining agreement to bring state law contract claims for breach of individual contracts between an employee and his/her employer. After reiterating that § 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective bargaining agreement," the Supreme Court concluded that employees' state claims for breach of their individual employment contracts are not preempted. Id. at 394, 107 S.Ct. 2425 (internal quotation omitted). The Supreme Court reasoned:

> Section 301 says nothing about the content or validity of individual employment contracts. It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so. Moreover, ... respondents' complaint is not substantially dependent upon interpretation of the collective-bargaining agreement. It does not rely upon the collective agreement indirectly, nor does it address the relationship between the individual contracts and the collective agreement.

Id. at 394–95.

The Third Circuit has interpreted Caterpillar as standing for the proposition that "employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state law action as pleaded does not require interpretation of the

7

collective bargaining agreement." Voilas, 170 F.3d at 373–74 (citing Caterpillar, 482 U.S. at 394–95, 107 S.Ct. 2425).

The Supreme Court next addressed § 301 in Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), where it considered whether § 301 completely preempted an employee's state law retaliatory discharge claim against her employer. The Supreme Court's analysis focused first upon the elements necessary to make a prima facie retaliatory discharge claim under the relevant state law: (1) discharge or a threat of discharge, and (2) a motive to deter the employee from exercising her rights. These elements, the court noted, constituted "purely factual questions pertain [ing] to the conduct of the employee and the conduct and motivation of the employer," neither of which "required a court to interpret any term of a collective-bargaining agreement." Id. at 407, 108 S.Ct. 1877. Accordingly, the Supreme Court concluded that the employee's state claim was "independent" of the relevant collective-bargaining agreement for purposes of § 301 because "resolution of the state-law claim did not require construing the collective bargaining agreement." Id.

Moreover, the Supreme Court found it irrelevant that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the employee] was fired for just cause [under her collective-bargaining agreement]." Id. at 408, 108 S.Ct. 1877. "Such parallelism," according to the Supreme Court, would not "render the state-law analysis dependent upon the contractual analysis." The Supreme Court stated that the reason for this is that § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of collective-bargaining agreements. In other words, even if dispute resolution pursuant to a

8

collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes. Id. at 409–410, 108 S.Ct. 1877.

The Third Circuit has previously had occasion to review extensively the Supreme Court's jurisprudence regarding the complete preemption of state law claims under § 301 of the LMRA. See, e.g., Voilas v. General Motors Corp., 170 F.3d 367, 373–76 (3d Cir.1999); Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 228–30 (3d Cir.1995); Berda v. CBS, Inc., 881 F.2d 20, 22–25 (3d Cir.1989); Kline v. Sec. Guards, Inc., 386 F.3d 246, 251–54 (3d Cir.2004). Based on those enumerated principles set forth by the Supreme Court, the Third Circuit has explained that "[o]nly state law claims 'inextricably intertwined with considerations of the terms of the labor contract' are preempted by [LMRA]." Malia v. RCA Corp., 794 F.2d 909, 912 (3d Cir.1986); see also Carrington v. RCA Global Communications, Inc., 762 F.Supp. 632, 640 (D.N.J.1991).

**b. Federal Preemption Under ERISA**

ERISA is a comprehensive regulatory scheme that Congress enacted after years of studying private employee benefit plans. Nolan v. Otis Elevator Co., 102 N.J. 30, 38, 505 A.2d 580, cert. denied, 479 U.S. 820, 107 S.Ct. 84, 93 L. Ed.2d 38 (1986). Congress enacted ERISA in 1974 "to protect participants of employee benefit plans and their beneficiaries from the abuses which previously existed in many retirement plans." *ERISA: Preemption of State Health Care Laws and Worker Well-Being*, 4 U. Ill. L.F. 825 (1981). The statute imposes participation, funding, and vesting requirements on private employee benefit plans. Employee benefit plans include both pension plans and health and welfare plans. ERISA also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility for the plans. In addition, the

statute provides civil and criminal penalties. <u>Nachman Corp. v. Pension Benefit Guar. Corp.</u>, 446 U.S. 359, 361 n. 1, 100 *S.Ct.* 1723, 1726 n. 1, 64 *L. Ed.*2d 354, 358 n. 1 (1980).

To guarantee uniformity in the enforcement of employee benefit plans, ERISA contains a sweeping preemption provision. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [covered by ERISA]." 29 U.S.C. § 1144(a).

## III.  **ANALYSIS**

### a.  **The State Law Claims Are Not Preempted by Section 301 of the LMRA**

Plaintiff's Motion to Remand is made on the ground that this Court lacks subject matter jurisdiction over his state law claims because his claims do not require the interpretation of the collective bargaining agreement and thus are not preempted by § 301 of the LMRA. Defendant counters this position by arguing that Plaintiff's claims raise federal questions and are therefore properly before this Court pursuant to U.S.C. § 1331. For the following reasons, I agree with Plaintiff.

The rationale employed by the Court in <u>Snyder v. Dietz</u> is particularly instructive to the case before us. <u>Snyder v. Dietz & Watson, Inc.</u>, 837 F.Supp. 2d 428 (D.N.J. 2011). In that case, the Defendants withheld wages for a purpose not authorized by the New Jersey Wage Payment Law (NJWPL), which sets forth certain categories for which wages may be deducted. (<u>Id.</u> at 433). Defendants argued that their conduct was justified because a provision in the collective bargaining agreement allowed for such deductions. (<u>Id.</u>). Just as Plaintiff argues in his reply brief, (ECF No. 7, at 8), the <u>Snyder</u> Court recognized that parties through a collective bargaining agreement cannot agree to override state law. (<u>Id.</u>). As such, the Court found that the Defendants could not rely on a provision in the collective bargaining agreement allowing wage deductions for purposes not

10

authorized by New Jersey state law. (Id. at 446). The Court, in rejecting the Defendants'
preemption defense, held that the employee's claim for violation of NJWPL was not preempted by
the LMRA. (Id. at 448). The Court reasoned that the resolution of the Plaintiff's NJWPL claim
did not require interpretation of the collective bargaining agreement. Rather, the Court explained,

> in determining whether Defendants violated the NJWPL, a trier of fact would have
> to decide (1) whether Defendants withheld wages from Plaintiff; (2) the purpose
> for withholding such wages; and (3) whether the purpose for withholding wages is
> one of the itemized reasons set forth in the NJWPL. The CBA need not be
> consulted to resolve any of these elements.

Id. at 445.

Ultimately, the issue here is whether the right not to be discriminated against based on a
disability under state law exists independently of any collective bargaining agreement. The parties
agree on the interpretation and operation of the collective bargaining provision in question. In
fact, Plaintiff, as master of the complaint, has not challenged the interpretation of the collective
bargaining agreement. Instead, Plaintiff is complaining of Verizon's allegedly discriminatory
actions. See Plt's Rep. Br., ECF No. 7, at 10; see also Kube v. New Penn Motor Express, Inc.,
865 F. Supp 221, 229 (D. N.J. 1994) (finding the outcome of plaintiff's discrimination claim
depended on the actual events which transpired between plaintiff and defendant, and not on the
meaning of any provisions of the collective bargaining agreement). In addition, it is well
established under Caterpillar that employees have the option of vindicating their interests by means
of either a § 301 action or an action brought under state law, as long as the state law action as
pleaded does not require interpretation of the collective bargaining agreement. Caterpillar Inc. v.
Williams, 482 U.S. 386, 394, 107 S.Ct. 2425 (1987). Plaintiff makes it clear that the "key inquiry
will be into the actions and motivations of the parties relative to rights conferred by state law . . .

11

not the rights of the parties under the collective bargaining agreement." (Plt's. Rep. Br., ECF No. 7, at 10).

Moreover, even if Plaintiff's claims are interpreted as challenging the legality of the MR-LOAPA provision in the collective bargaining agreement, Courts have interpreted the case law finding LMRA preemption in such cases, as not standing for "the broad proposition that every claim challenging the legality of a provision in a CBA must be preempted under the LRMA." Snyder v. Dietz & Watson, Inc., 837 F. Supp. 2d 428, 447 (D. N.J. 2011). Instead, these cases have been interpreted to "stand simply for the unremarkable proposition that an application of state law is preempted by § 301 of the LMRA only if such application requires the interpretation of a collective bargaining agreement." (Id.).

Lastly, after extensively reviewing LMRA jurisprudence, I have concluded that § 301 preempts those actions that concern the meaning or interpretation of the collective bargaining agreement, when the employer, union, and/or employee dispute the parties' rights and obligations under such an agreement. This case does not call for that interpretation. Accordingly, I agree with Plaintiff's position that the terms and meaning of the MR-LOAPA are "not disputed" and thus no interpretation or analysis is necessary. Plaintiff highlights the following:

> Verizon does not dispute that it notified plaintiff of the MR-LOAPA on August 13, 2013; that it thereafter placed plaintiff on restricted duty; that, 150 days from the date (January 10, 2014), it intended to place him on a Medical Restriction Leave of Absence (MR-LOA); and that, once that leave expired, it intended to terminate his employment.

(Plt's. Rep. Br., ECF No. 7, at 9).

This is distinguishable from other cases in which interpretation of a collective bargaining provision was necessary to resolve the Plaintiff's claims. See Firestone v. Southern California Gas Co., 219 F.3d 1063, 1065 (9th Cir. 2000), cert. denied, 122 S. Ct. 2662 (2002) (court needed to analyze

12

CBA to calculate rate of pay). Here, the Court will only need to review the actions of Verizon to

resolve Plaintiff's claims. To establish a prima facie case for disparate treatment for a disability

under the NJLAD,

> a plaintiff must first present the prima facie elements required in any LAD disability
> discrimination claim, that is: (1) plaintiff was disabled within the meaning of the
> statute; (2) plaintiff was qualified to perform the essential functions of the position
> of employment [with or without accommodation]; and (3) plaintiff suffered an
> adverse employment action because of the disability.

Mickens v. Lowe's Companies, Inc., No. CIV. 07-CV-6148 (DMC), 2009 WL 4911952, at *3
(D.N.J. Dec. 14, 2009).

In addition, although the NJLAD does not specifically address the issue of reasonable
accommodation, New Jersey courts

> have uniformly held that the [NJLAD] nevertheless requires an employer to
> reasonably accommodate an employee's handicap. To show that an employer failed
> to participate in the interactive process, a disabled employee must demonstrate: (1)
> the employer knew about the employee's disability; (2) the employee requested
> accommodations or assistance for her disability; (3) the employer did not make a
> good faith effort to assist the employee in seeking accommodations; and (4) the
> employee could have been reasonably accommodated but for the employer's lack
> of good faith.

Bravo v. Union Cnty., No. CIV. 12-2848 (DRD), 2013 WL 2285780, at *12 (D.N.J. May 23,
2013).

Whether or not Plaintiff can meet these elements can be determined without examining the

collective bargaining agreement. Therefore, because the resolution of Plaintiff's failure to

accommodate and disparate treatment claims will not involve analysis or interpretation of the

collective bargaining agreement between Verizon and Plaintiff's union, Plaintiff's claims of failure

to accommodate and disparate treatment are not preempted under § 301 of the LMRA.

13

b. **Plaintiff's Acceptance of the EISP**

Alternatively, Defendant contends that remand is inappropriate and that this Court has federal question jurisdiction over the matter because Plaintiff's claims are preempted under ERISA. (Defendant's Notice of Removal, ECF No. 1, at 3). Specifically, Defendant argues that, "the analysis of any claim by Plaintiff that he was constructively discharged (i.e., forced into accepting the EISP) will require an interpretation and application of the terms of this ERISA plan and other ERISA-based considerations." (Def. Opp'n., ECF No. 6, at 13). Plaintiff counters that Defendant misinterprets Plaintiff to have alleged that his acceptance of the EISP constituted a constructive discharge. (Plt's. Rep. Br., ECF No. 7, at 11). Plaintiff contends that he never made such an allegation and that instead, the following actions constituted a constructive discharge:

> Due to its negotiation and implementation of the [MR-LOAPA]; its refusal to permit Mr. Sharkey to work as a Facilities Technician; its reassignment of Mr. Sharkey to a series of less desirable, "light duty" assignments; and Verizon's stated intent to place Mr. Sharkey on an unpaid medical leave and then terminate his employment, Verizon made significant and severe changes in the terms and conditions of Mr. Sharkey's employment such that a reasonable person would have felt compelled to resign.

Compl. ¶ 41.

For the following reasons, I hereby conclude that Plaintiff's claims are not preempted by ERISA.

Section 514 (a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. 1144(a). The Supreme Court has established that a law "relates to" an employee benefits plan if it has a "connection with or reference to" such a plan. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90-91, S.Ct. 2890, 2895. Here, Plaintiff's discrimination claims do not have as their basis the denial of employee benefits, the failure to provide information about such benefits, or the failure to comply in some other way with ERISA. In fact, based on the record, their sole relationship to an employee benefits plan is

14

that Plaintiff eventually chose to accept Verizon's EISP, which is undisputed.  As Plaintiff emphasizes in both his initial brief and reply brief, Plaintiff's Complaint does not assert that he was forced to accept the EISP, nor does it contend that his acceptance of the EISP constituted a constructive discharge.  (ECF No. 4-1, at 14, ECF No. 7, at 11).  Therefore, this Court is unpersuaded to convert what it finds to be employment discrimination claims, into those that "relate to" ERISA within the meaning of § 514.

Moreover, the case before us is distinguishable from Nolan v. Otis Elevator, Co., 102 N.J. 30, 505 A.2d 580 (1986), which provides an example of a NJLAD claim that was found to be preempted by ERISA.  In Nolan, Plaintiff claimed that the employer offered special retirement benefits to employees over 55, while not offering the same benefits to employees under the age of 55.  As such, Plaintiff's claim in Nolan was entirely based on the denial of the opportunity to participate in an employee benefits plan.  Unlike Nolan, in this matter, Plaintiff's claims stand independent from Verizon's benefits plan.

In addition to Defendant's ERISA argument, Defendant also contends that "any claim concerning the EISP is preempted [by the LMRA] given that its resolution will require the interpretation of the CBA."  (Plt's. Rep. Br., ECF No. 6, at 6).  Defendants reasoning is that that the EISP that Plaintiff accepted is a collectively-bargained for benefit, which is detailed in Article VII of the collective bargaining agreement.  (Id.).  For similar reasons mentioned above, this Court is not convinced that any of Plaintiff's claims will require the interpretation of the collective bargaining agreement.  Mere "reference to or consideration of the terms of a collective bargaining agreement is not the equivalent of interpreting the meaning of the terms" Laresca v. AT&T, 161 F.Supp. 2d 323, 326, 330 (D.N.J. 2001).  Based on the foregoing, the Court finds there is no federal question jurisdiction and the case must be remanded.

**c.** **Attorneys' Fees and Costs**

Finally, the Court addresses Plaintiff's request for attorneys' fees pursuant to 28 U.S.C. §

1447(c).  Section 1447(c) provides: "An order remanding the case may require payment of just

costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28

U.S.C. § 1447(c).  "[A] district court has broad discretion and may be flexible in determining

whether to require the payment of fees under section 1447(c).  Mints v. Educ. Testing Serv., 99

F.3d 1253, 1260 (3d Cir. 1996).  The Supreme Court, however, has established that, in removal

cases, "the standard for awarding fees should turn on the reasonableness of the removal.  Absent

unusual circumstances, courts may award attorney's fees only where the removing party lacked an

objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable

basis exists, fees should be denied."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126

S.Ct. 704 (2005).  Under the circumstances presented in this case, the Court cannot say that

Defendant "lacked an objectively reasonable basis for seeking removal."  See Martin, 546 U.S. at

141, 126 S.Ct. 704; see also Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694

(awarding fees simply because the party did not prevail "could discourage all but the most airtight

claims, for seldom can a party be sure of ultimate success").  Accordingly, this Court respectfully

recommends that Plaintiff's request for fees and costs be **DENIED**.

## IV.   **CONCLUSION**

Based on the foregoing, this Court recommends that Plaintiff Sharkey's Motion to Remand be **GRANTED** and Plaintiff's request for attorneys' fees and costs be **DENIED**. As such, each party shall bear its own costs with respect to this litigation.

_____
JOSEPH A. DICKSON, U.S.M.J.

cc.    Honorable Jose L. Linares, U.S.D.J.

17