**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER SHARKEY,<br><br>    Plaintiff,<br><br>v.<br><br>VERIZON NEW JERSEY INC.<br><br>    Defendant. | Civil Action No. 14-cv-02788 (JLL) (JAD)<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S RENEWED MOTION TO REMAND AND REQUEST FOR ATTORNEYS' FEES AND COSTS |

**JOSEPH A. DICKSON, U.S.M.J.**

      This matter comes before the Court upon Plaintiff's renewed motion to remand this matter to the Superior Court of New Jersey, Essex County, pursuant to 28 U.S.C. § 1447(c). (ECF No. 21). The Hon. Jose L. Linares, U.S.D.J. referred Plaintiff's motion to this Court for a Report and Recommendation. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on Plaintiff's application. Upon consideration of the parties' submissions, and for the reasons stated below, it is the recommendation of this Court that Plaintiff's motion be **GRANTED IN PART AND DENIED IN PART**. Specifically, this Court recommends that the District Court remand this case to the New Jersey Superior Court and deny Plaintiff's application for an award of attorneys' fees pursuant to 28 U.S.C. § 1447(c).

I. **BACKGROUND**

    a. **Relevant Factual Background**

Plaintiff Peter Sharkey was an employee of Defendant Verizon New Jersey Inc. ("Verizon") from December 1986 to the end of December 2013. (Am. Compl., ECF No. 19, ¶ 6). During his employment, Plaintiff worked as a Facilities Technician. (Id. ¶ 7-8). Plaintiff alleged that he injured his back in a work-related accident sometime in 1990. (Id. ¶ 9). As a result of that injury, Plaintiff underwent three back surgeries, with the latest surgery being in 2003. (Id. ¶¶ 9-10). After his most recent surgery in 2003, Plaintiff's physician imposed certain restrictions on Plaintiff, such as prohibiting him from climbing polls or ladders or lifting more than sixty pounds. (Id. ¶ 10). Despite those restrictions, which Verizon was aware of, Plaintiff continued in his role as a Facilities Technician until August 2013. (Id. ¶¶ 7, 11, 28). Specifically, Plaintiff alleges that Verizon temporarily accommodated his disability by permitting him to work on ground-mounted pedestals for a period of approximately eight years (the "Accommodations Period"). (Id. ¶¶ 11). Plaintiff contends that, during the Accommodations Period, he "satisfied all metrics established for measuring the productivity of a Verizon Facilities Technician and was therefore able to perform the essential functions of his job." (Id. ¶ 16). Specifically, Plaintiff alleges that he "completed the required four (4) jobs per day", (id. ¶ 12), had a "repeater rate" (a measure of how often a technician is required to return to a job) of less than ten percent, (id. ¶ 13), received "excellent performance reviews", (id. ¶ 14), and "few (if any) customer complaints." (Id. ¶ 15).

Plaintiff alleges that, in or about September 2012, Verizon and AFL-CIO Locals 827 and 1944 agreed to adopt a Medical Restriction Leave of Absence Policy Amendment (the "MR-LOAPA"). (Id. ¶ 17). The MR-LOAPA concerned "the treatment of associate employees who are determined to be able to work but have medical restrictions that may prevent performance of

all the essential functions of their normal assignment with or without reasonable accommodation." (Id. ¶ 18). The MR-LOAPA also provided, in pertinent part, that "an employee who was 'medically restricted' for more than 150 days and for whom another position was not available would, if eligible, be placed on a Medically Restricted Leave of Absence (MR-LOA) or a leave pursuant to the Family Medical Leave Act." (Id. ¶ 19). Once that leave expired, Verizon could "drop[] [the employee] from the payroll." (Id.).

On or about August 13, 2013, Verizon informed Plaintiff that, as a result of his ongoing medical restrictions and the MR-LOAPA, it would no longer permit Plaintiff to work as a Facilities Technician. (Id. ¶¶ 20-22). Verizon told Plaintiff that he was required to find an appropriate alternative position and that, if he failed to do so by January 10, 2014, Verizon would place him on an unpaid medical for seven months. (Id. ¶ 21). Verizon further advised Plaintiff that, at the conclusion of that seven month medical leave, Verizon would terminate Plaintiff's employment. (Id.).

Plaintiff alleges that, on or about August 13, 2013 (i.e., the date Verizon advised Plaintiff that it would no longer permit him to work as a Facilities Technician), Verizon began to give Plaintiff a series of "light duty" assignments, such as "riding in a truck with technicians; rewiring a pedestal; taking computer classes; and working in Motor Vehicles transporting and driving trucks to the inspection station." (Id. ¶ 22). Between late August 2013 and December 2013, Plaintiff attempted, without success, to locate another position at Verizon. (Id. ¶ 23-24). Plaintiff alleges that, "faced with the certainty that he would be placed on the unpaid MR-LOA for seven months and then terminated, [he] elected to leave the company at the end of December 2013." (Id. ¶ 25).

3

b.   **Procedural History**

Plaintiff commenced this matter on March 25, 2014 by filing a Complaint against Verizon in the Superior Court of New Jersey, Law Division, Essex County, alleging multiple violations of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq. ("NJLAD"). (Compl., ECF No. 1 at 10, ¶¶ 23-45). On May 1, 2014, Verizon removed the case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1441(a), contending that Plaintiff's claims implicated questions of federal law. (Not. of Rem., ECF No. 1, ¶ 22). Specifically, Verizon asserted that Plaintiff's claims were completely preempted by the Labor Management Relations Act, 29 U.S.C. § 185, et. seq. ("LMRA"), "because their resolution requires an analysis an interpretation of a collective bargaining agreement . . . between Verizon NJ and the labor union representing Plaintiff." (Id. at ¶ 6). Verizon also argued that Plaintiff's claims were completely preempted the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq, ("ERISA"). (Id. at ¶ 7). In particular, Verizon contended that an analysis of Plaintiff's allegation of constructive discharge (an offshoot of Plaintiff's other substantive claims) required an interpretation and application of the terms of the ERISA governed separation offer that Plaintiff chose to participate in. (Id. at ¶ 16).

Plaintiff filed a motion to remand the case back to the New Jersey Superior Court, challenging Verizon's preemption arguments, (ECF No. 4), which Verizon opposed. (ECF No. 6). By Report and Recommendation dated November 21, 2014, this Court recommended that the District Court grant Plaintiff's motion and remand this matter back to state court. (ECF No. 12). Verizon filed a timely objection to that Report and Recommendation. (ECF No. 16). By Order dated December 18, 2014, the Hon. Jose L. Linares, U.S.D.J. denied Plaintiff's motion to remand without prejudice, sua sponte dismissed both counts of Plaintiff's Complaint for failure to state a

4

claim and granted Plaintiff leave to file an amended pleading. (ECF No. 18). Judge Linares set forth his rationale for those rulings in an accompanying Opinion. (ECF No. 17). In particular, Judge Linares determined that, because Plaintiff had not alleged sufficient facts to enable the Court to conduct the necessary preemption analyses, the Court was not in a position to resolve Plaintiff's motion to remand. For instance, with regard to Verizon's arguments regarding LMRA preemption, Judge Linares wrote:

> It is not entirely clear to this Court, however, whether Plaintiff's theory of the case is that the terms of the MR-LOAPA, *itself*, caused the adverse employment action, or if the actions taken as a result of the policy changes caused the adverse employment action in either Count . . . Only by understanding the true contours of Plaintiff's claims of disparate treatment and failure to accommodate, will this Court be in a position to properly assess whether such claim "substantially" depends on the analysis of any particular terms of the relevant CBA – and thus to determine whether Count one and Two are completely preempted by § 301 of the LMRA."

(See Opinion, ECF No. 17, at 10-11). Judge Linares found that Plaintiff's flawed pleading similarly precluded a proper analysis of Verizon's ERISA preemption argument. (Id. at 11-12).

On January 16, 2015, Plaintiff filed an Amended Complaint in accordance with Judge Linares's December 18, 2014 Order. (ECF No. 19). On January 22, 2015, Plaintiff filed the renewed motion to remand currently before the Court, once again challenging Defendant Verizon's complete preemption arguments and seeking an award of attorneys' fees in connection with the removal/remand process. (ECF No. 21). The parties have since fully briefed that motion. (ECF Nos. 28, 29).

## II. **LEGAL DISCUSSION**

### a. **Removal and Remand - Generally**

Section 1441(a) of Title 28 allows removal of a civil action from state court to federal court if the federal court would have original subject matter jurisdiction over the action. Caterpillar Inc.

v. Williams, 482 U.S. 386, 392 (1987). A federal district court has original subject matter jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). This is known as "diversity jurisdiction." An action can be removed on the basis of diversity jurisdiction only "if there is a complete diversity between all named plaintiffs and defendants." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 84 (2005). This "complete diversity" requirement prohibits removal if a plaintiff and any defendant are citizens of the same state. Kaufman v. Allstate N.J. Insur. Co., 561 F.3d 144, 148 (3d Cir. 2009). An action may also be removed if it includes a claim arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1441(a). This is commonly known as "federal question jurisdiction." A claim "arises under" federal law if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-8 (1983). In certain cases federal question jurisdiction will lie over state law claims that implicate significant federal issues or "turn on substantial questions of federal law." Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). Federal question jurisdiction exists over state law claims when "the state law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 308.

Here, Defendant Verizon initially removed this action to federal court solely on the basis of federal question jurisdiction, contending that Plaintiff's claims, though pled exclusively under New Jersey state law, were completely preempted by both the LMRA and ERISA. (Not. of Rem., ECF No. 1, ¶¶ 5-8). As noted above, Plaintiff filed an Amended Complaint pursuant to the Hon.

Jose L. Linares, U.S.D.J.'s December 22, 2014 Order prior to filing his renewed motion to remand. In light of the revised content of Plaintiff's pleading, Verizon has acknowledged that ERISA preemption is no longer applicable, (Def. Br., ECF No. 28, at 4, n.1), and the Court will therefore limit its analysis to whether the LMRA serves as a valid basis for removal.

As the United States Court of Appeals for the Third Circuit has acknowledged, "[o]rdinarily, a case is not removable to federal court simply because, as here, the defendant raises federal preemption as a defense. Rather, removal on the basis of federal question jurisdiction . . . generally requires that a federal question be presented on the face of the plaintiff's properly pleaded complaint." Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 228 (3d Cir. 1995) (internal citations omitted). "This well-pleaded complaint rule 'makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.'" Id. (quoting Caterpillar Inc., 482 U.S. at 392). "In certain limited circumstances, however, a defendant may be able to remove a case notwithstanding a complaint's apparent grounding in state law. One such circumstance occurs when a state-law claim is preempted under section 301 of the LMRA." Id. Plaintiff's renewed motion for remand, therefore, turns squarely on whether, as Defendant contends, the LMRA operates to preempt Plaintiff's state law claims. If the LMRA does not preempt at least one of those claims (the only remaining potential basis for subject matter jurisdiction that Defendant has articulated) then the Court must grant Plaintiff's motion. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

b.  **Federal Preemption Under the LMRA**

In Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court set forth the standard for determining whether a state law cause of action is

completely preempted by § 301 of the LMRA: "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." Id. at 220, 105 S.Ct. 1904 (citation omitted). In that case, the plaintiff brought a state tort claim against his employer for the bad-faith processing of an insurance claim. The Supreme Court concluded that the cause of action was completely preempted by § 301 because "the duties imposed and rights established through the state tort...derive from the rights and obligations established by the [collective-bargaining] contract," and resolution of the dispute would therefore "inevitably...involve contract interpretation." Id. at 217–18. The Supreme Court noted, however, that "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Id. at 212.

Subsequently, in Caterpillar Inc., the Supreme Court considered whether § 301 permitted employees covered by a collective bargaining agreement to bring state law contract claims for breach of individual contracts between an employee and his/her employer. After reiterating that § 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective bargaining agreement," the Supreme Court concluded that employees' state claims for breach of their individual employment contracts were not preempted. Id. at 394 (internal quotation omitted). The Supreme Court reasoned:

> Section 301 says nothing about the content or validity of individual employment contracts. It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so. Moreover . . . respondents' complaint is not substantially dependent upon interpretation of the collective-bargaining agreement. It does not rely upon the collective agreement indirectly, nor does it address

> the relationship between the individual contracts and the collective agreement.

Id. at 394–95.

The Third Circuit has interpreted Caterpillar as standing for the proposition that "employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state law action as pleaded does not require interpretation of the collective bargaining agreement." Voilas v. General Motors Corp., 170 F.3d 367, 373–74 (3d Cir.1999) (citing Caterpillar, 482 U.S. at 394–95, 107 S.Ct. 2425).

The Supreme Court next addressed Section 301 preemption in Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), where it considered whether § 301 completely preempted an employee's state law retaliatory discharge claim against her employer. The Supreme Court's analysis focused first upon the elements necessary to make a prima facie retaliatory discharge claim under the relevant state law: (1) discharge or a threat of discharge, and (2) a motive to deter the employee from exercising her rights. These elements, the court noted, constituted "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer," neither of which "required a court to interpret any term of a collective-bargaining agreement." Id. at 407, 108 S.Ct. 1877. Accordingly, the Supreme Court concluded that the employee's state claim was "independent" of the relevant collective-bargaining agreement for purposes of § 301 because "resolution of the state-law claim did not require construing the collective bargaining agreement." Id.

Moreover, the Lingle Court found it irrelevant that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether [the employee] was fired for just cause [under her collective-bargaining agreement]." Id. at 408, 108 S.Ct. 1877. "Such parallelism," the Supreme Court noted, would not "render the state-law

9

analysis dependent upon the contractual analysis." The Supreme Court stated that the reason for this is that § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of collective-bargaining agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes. Id. at 409–410, 108 S.Ct. 1877.

In Livadas v. Bradshaw, 512 U.S. 107 (1994), the Court summarized the thrust of its earlier Section 301 jurisprudence as follows: "the pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement,' . . . nor by parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements." Id. at 122-23 (internal citations omitted). The Livadas Court also noted that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and . . . that it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . (and not whether a grievance arising from 'precisely the same set of facts' could be pursued" . . . that decides whether a state cause of action may go forward." Id. at 123-24 (internal citations omitted). Finally, the Court reiterated that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation

plainly does not require the claim to be extinguished." Id. at 124. With those principles in mind, the Livadas Court determined that the LMRA did not preempt the plaintiff's state-law claims under the California Labor Code (i.e., based on the defendant's alleged failure to pay all wages due to plaintiff promptly upon the plaintiff's termination), as resolution of the plaintiff's claim was "entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer." Id. at 124-25. The Court also noted that "when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." Id. at 125. The United States Court of Appeals for the Third Circuit has similarly distinguished situations in which a court must actually "interpret" a collective-bargaining agreement (thus triggering LMRA preemption) from those where the court simply examines the terms of such an agreement (to which LMRA preemption is not applicable). See Kline v. Sec. Guards, Inc., 386 F.3d 246, 251–54 (3d Cir. 2004) ("A finding of § 301 preemption is not mandated simply by the contention that Appellants' state law claims "necessarily implicate" the CBA. That is, the mere fact that we must look at the CBA in order to determine that it is silent on any issue relevant to Appellants' state claims does not mean that we have "interpreted" the CBA.")

    c.    **Application to Plaintiff's Individual Causes of Action**

Plaintiff asserts two causes of action in his Amended Complaint. First, Plaintiff contends that Verizon failed to accommodate his alleged disability in violation of the New Jersey Law Against Discrimination ("NJLAD"). (Am. Compl., ECF No. 19, ¶¶ 26-37). Second, Plaintiff alleges that Verizon engaged in "disparate treatment" discrimination under the NJLAD. (Id. ¶¶ 38-46). At a facial level, both claims appear to turn solely on questions of New Jersey state law. The Court will address LMRA preemption in connection with each of Plaintiff's claims in turn.

### i. **Failure to Accommodate Disability**

In order to prevail on a "failure to accommodate" claim under the NJLAD, a plaintiff must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 (3d Cir. 2006). This Court finds that each of those elements can be resolved without an "interpretation" of the collective-bargaining agreement at issue. Verizon, which bears the burden of establishing that this Court may exercise subject matter jurisdiction over Plaintiff's claims, Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 162 (3d Cir. 2014) ("'The removing party . . . carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court.'") (internal citations omitted), contends that Plaintiff's "failure to accommodate" claim is preempted by Section 301 of the LMRA. (Def. Br., ECF No. 28, at 7-8). Verizon's argument, however, is based on a mischaracterization of the allegations set forth in Plaintiff's Amended Complaint.

Verizon represents that "Plaintiff's specific claim is that the application of the collectively bargained MR-LOAPA to him resulted in a failure to accommodate him. Specifically, Plaintiff alleges that the MR-LOAPA caused Verizon to deny him an accommodation." (Id. at 7). Defendant then concludes, without further explanation, that: "Plaintiff's claim, therefore, is that the MR-LOAPA itself violated the NJLAD." (Id.). That is a mischaracterization of Plaintiff's claim. Plaintiff does not challenge the validity or legal impact of the MR-LOAPA at all. (See generally Am. Compl., ECF No. 19). Rather, Plaintiff contends that Verizon's actions in rescinding the accommodation it had previously provided for approximately eight years, taken nearly a year after Verizon and Plaintiff's union allegedly entered into the MR-LOAPA, (id. ¶¶

12

17, 20, 32), coupled with its failure to provide a reasonable alternative accommodation, constitute an actionable "failure to accommodate" under the NJLAD. (Id. ¶¶ 27-34). Plaintiff bases his cause of action solely on Defendant's alleged conduct, not the content or effect of the MR-LOAPA, as is his right as master of the complaint under governing Supreme Court precedent. See, e.g., Caterpillar Inc., 482 U.S. at 394.

Defendant further argues that the Court will have to "interpret the MR-LOAPA to determine whether the suite of benefits it provided to Plaintiff satisfied [Verizon's] legal obligations. Those benefits include not only those listed in the Complaint, but additional accommodations such as priority placement in lateral or downgrade jobs that the Plaintiff can do, among others." (Def. Br., ECF No. 28, at 8). Defendant ostensibly argues that the Court will have to interpret the MR-LOAPA in order to determine whether Defendant made a "good faith" effort to accommodate Plaintiff's disability (i.e., the third element of a "failure to accommodate claim"). Defendant's argument fails in two respects. First, Defendant's argument would require the Court to go beyond the allegations of the Complaint to determine (based solely on Defendant's counsel's unsupported representations), (id.), that the MR-LOAPA provided Plaintiff with additional, potential accommodations. Indeed, Plaintiff has alleged that that Defendant failed to provide him with alternative, reasonable accommodations. (Am. Compl., ECF No. 19, ¶ 33). ("Verizon engaged in no interactive process – formal or informal – to identify other potential reasonable accommodations that could be adopted.") Second, the Court finds that, even if the MR-LOAPA does include a list of potential, alternative accommodations, the Court's review of such a list would not constitute an "interpretation" of the MR-LOAPA consistent with governing precedent from the Supreme Court and Court of Appeals. See Livadas, 512 U.S. at 125 (the Court acknowledged that having to "look to" a collective-bargaining agreement for guidance on the calculation of

13

damages did not constitute the sort of "interpretation" that would trigger Section 301 preemption); Kline, 386 F.3d at 251–54 ("[T]he mere fact that we must look at the CBA in order to determine that it is silent on any issue relevant to Appellants' state claims does not mean that we have 'interpreted' the CBA.").

Defendant, who bears the burden of establishing that the Court's exercise of subject matter jurisdiction would be appropriate, Manning, 772 F.3d at 162, has not articulated any other reason as to why the Court might have to "interpret" the parties' collective-bargaining agreement in the context of adjudicating Plaintiff's "failure to accommodate" claim. A court can resolve each element of Plaintiff's claim without analyzing or interpreting the parties' collective bargaining agreement. Indeed, it appears that a court will only have occasion to interpret the terms the MR-LOAPA itself if Defendant injects the content and legal effect of that agreement into the case as part of a defense (e.g., that Plaintiff, through his union representatives, somehow waived the statutory rights he now seeks to enforce). As noted above, however, defenses cannot typically serve as the basis for removal, Rivet v. Regions Bank, 522 U.S. 470, 475 (1998) ("A defense is not part of a plaintiff's properly pleaded statement of his or her claim. Thus, 'a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.") (internal citations omitted), and Defendant has not provided the Court with any case law suggesting that this situation necessitates an exception from that general rule.

In sum, the Court finds that Plaintiff's "failure to accommodate" claim, as pled, neither seeks relief in connection with the parties' collective-bargaining agreement nor requires any interpretation of that agreement. Rather, Plaintiff's claim is based upon an independent right

created under New Jersey state law. That claim, therefore, is not subject to preemption under Section 301 of the LMRA.

### ii. Disparate Treatment

Defendant's arguments concerning Plaintiff's "disparate treatment" claim fail for essentially the same reasons. "Disparate treatment claims under the NJLAD are evaluated using the familiar framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." Kimber-Anderson v. City of Newark, 502 F. App'x 210, 212 (3d Cir. 2012). "Following that framework the plaintiff must first come forward with sufficient evidence to constitute a prima facie case of discrimination." Id. (citing Dixon v. Rutgers, The State Univ. of New Jersey, 110 N.J. 432, 541 A.2d 1046, 1051 (N.J. 1988)). To establish a prima facie case, a plaintiff must demonstrate "[1] that she belongs to a protected class, [2] that she was performing her job at a level that met her employer's legitimate expectations, [3] that she suffered an adverse employment action, and [4] that others not within that protected class did not suffer similar adverse employment actions." Id. (citing El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 887 A.2d 1170, 1182 (N.J. Super. Ct. App. Div. 2005)).

Defendant argues that Plaintiff has alleged that the MR-LOAPA itself caused the injuries that he suffered in connection with his "disparate treatment"/"constructive discharge" claim. (Def. Br., ECF No. 28, at 5) ("Plaintiff alleges that the MR-LOAPA caused a 'significant change in [his] employment status'" . . . Plaintiff also specifically alleges that it was the application of the MR-LOAPA to him that caused his constructive discharge.") Defendant, in turn, contends that, to properly analyze Plaintiff's allegations of "constructive discharge", "the Court will have to review all of the MR-LOAPA's provisions and determine whether working under them rendered Plaintiff's position so undesirable as to force him to resign. The Court cannot possibly perform

15

this inquiry without analyzing all of the provisions of the MR-LOAPA." (Id. at 6). Like its position on Plaintiff's "failure to accommodate" claim, however, Defendant's argument here is premised on a mischaracterization of Plaintiff's allegations.

Plaintiff simply alleges that it was Defendant's actions that caused the injuries associated with his claims for "disparate treatment" / "constructive discharge." Plaintiff alleged that he "was qualified to perform and in fact was performing the essential functions of his job with the accommodation that Verizon had provided him for approximately eight years", (Am. Compl., ECF No. 19, ¶ 41), and that he was "performing his job at a level that met Verizon's legitimate expectations." (Id. ¶ 42) (citing the fulfillment of his "four jobs per day" quota, his "low repeater rate", "excellent performance reviews" and overall customer satisfaction in support of that statement). Plaintiff further alleges that, because of his disability, Defendant prohibited him from continuing to work as a "Facilities Technician", reassigned him to various "light duty" tasks, (Id. ¶¶ 35, 43), and advised Plaintiff that it was going to place him on a temporary, unpaid medical leave before ultimately terminating his employment. (Id. ¶¶ 21, 35, 43). Plaintiff alleges that "[o]ther, non-disabled Verizon employees did not [s]uffer similar adverse employment actions." (Id. ¶ 44). Simply put, Plaintiff alleges only that Defendant's specifically enumerated actions violated his rights under the NJLAD. His claim is neither "founded directly on rights created by a collective-bargaining agreement[]", nor "substantially dependent on analysis of a collective-bargaining agreement." Caterpillar, 482 U.S. at 394.[1] The Court, therefore, finds that Plaintiff's

---

[1] For the same reasons articulated in Section II(c)(i) above in connection with Plaintiff's "failure to accommodate" claim, the Court finds that, even if Defendant sought to inject the content of the MR-LOAPA into the case as part of a defense, that would not provide a legitimate grounds for removal.

claims for "disparate treatment" / "constructive discharge" are not subject to preemption under Section 301 of the LMRA.

### iii. This Case Should Be Remanded to the New Jersey Superior Court

As noted above, Defendant's only remaining, stated basis for invoking this Court's subject matter jurisdiction was that each of Plaintiff's causes of action were preempted under Section 301 of the LMRA. For the reasons set forth above, this Court finds that none of Plaintiff's claims, as currently pled, are subject to preemption. The Court therefore finds that this case must be remanded to the New Jersey Superior Court in accordance with 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

### d. Plaintiff's Request for Attorneys' Fees

The Court next addresses Plaintiff's request for attorneys' fees pursuant to 28 U.S.C. § 1447(c). (Pl. Br., ECF No. 21-1, at 9). Section 1447(c) provides: "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (emphasis added). "[A] district court has broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c). Mints v. Educ. Testing Serv., 99 F.3d 1253, 1260 (3d Cir. 1996). The Supreme Court, however, has established that "the standard for awarding fees [under 28 U.S.C. § 1447(c)] should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704 (2005). Under the circumstances presented in this case, the Court cannot say that Defendant "lacked an objectively reasonable basis

17

for seeking removal." See Martin, 546 U.S. at 141, 126 S.Ct. 704; see also Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694 (awarding fees simply because the party did not prevail "could discourage all but the most airtight claims, for seldom can a party be sure of ultimate success"). Indeed, Plaintiff made no effort to address the "objectively reasonable basis" standard in either of its briefs on this motion. (See generally ECF Nos. 21-1 and 29). Accordingly, this Court respectfully recommends that Plaintiff's request for fees and costs be **DENIED**.

### III.  CONCLUSION

Based upon the foregoing, this Court respectfully recommends that Plaintiff's motion to remand this matter to the Superior Court of New Jersey, Essex County, pursuant to 28 U.S.C. § 1447(c), (ECF No. 21), be **granted in part and denied in part**. Specifically, this Court respectfully recommends that the District Court remand this case to the Superior Court of New Jersey and deny Plaintiff's request for attorneys' fees.

_____<br>
JOSEPH A. DICKSON, U.S.M.J.

cc.  Honorable Jose L. Linares, U.S.D.J.